Case 5:25-cv-01200-FB-RBF   Document 8   Filed 12/03/25   Page 1 of 6

FILED
December 03, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____VL_____
                DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

YAMIL KADIR SANTIAGO TORRES

    Plaintiff,

V.

COLLECTORS UNIVERSE, INC d/b/a
PROFESSIONAL SPORTS AUTHENTICATOR (PSA)

    Defendant.

Civil Action No. 5:25-cv-01200-FB

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Yamil Kadir Santiago Torres ("Plaintiff"), appearing pro se, files this First Amended Complaint against Defendant Collectors Universe, Inc. d/b/a Professional Sports Authenticator ("PSA" or "Defendant"), and alleges as follows:

## INTRODUCTION

This case arises from PSA's mishandling of a uniquely scarce W600 "Sporting Life" Ty Cobb cabinet card that Plaintiff submitted for PSA's "dual" service authentication of both the card and the autograph.

2. PSA accepted the submission under PSA Order No. 24573735 / Submission No. 12603590, assigned Certification No. 101214417, and internally recorded the card as "NO: AUTHENTIC - Auto: Questionable Authenticity." PSA then returned the card without being encapsulated with a label reading "? AUTH TCT - DO NOT HOLDER," and provided no publicly searchable certification entry for the card component.

3. The absence of any publicly verifiable certification, despite PSA's internal "Authentic" notation for the card, has destroyed the commercial marketability of this high-value asset. Comparable PSA-authenticated W600 Ty Cobb cabinets have sold for around $300,000, and Plaintiff alleges a current fair-market value between approximately $1.5 million and $2 million, subject to proof at trial.

4. Plaintiff asserts claims for breach of contract (and, in the alternative, breach of the implied covenant of good faith and fair dealing under California law, promissory estoppel, and negligent misrepresentation, negligence, and violation of the Texas Deceptive Trade Practices Act ("DTPA"), and seeks damages and equitable relief compelling PSA to issue appropriate, usable authentication for the card component.

## II. PARTIES

5. Plaintiff Yamil Kadir Santiago Torres is a natural person and citizen of Texas residing in Bexar County. He purchased PSA's services, paid the required fees, submitted the card, and suffered economic injury in Texas.

6. Defendant Collectors Universe, Inc. d/b/a Professional Sports Authenticator (PSA) is a corporation organized under the laws of Delaware with its principal place of business in California, and is a citizen of Delaware and California for jurisdictional purposes. It operates the PSA grading and authentication division and maintains its principal office at 1610 E. St. Andrew Place, Santa Ana, California 92705.

## III. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is a citizen of Texas, PSA is a citizen of Delaware and California, and the amount in controversy exceeds $75,000 exclusive of interest and costs, as Plaintiff seeks monetary relief in excess of $1,000,000 based on the loss in market value of a rare W600 Ty Cobb card.

8. PSA has purposefully availed itself of the privilege of conducting business in Texas by, among other things, soliciting grading and authentication submissions from Texas residents, maintaining an online submission system available to Texas customers, and accepting Plaintiff's submission and payment for services, causing economic injury in Texas.

9. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Bexar County, Texas, and Plaintiff's injuries were suffered there.

## IV. BACKGROUND FACTS

10. The item at issue is a W600 "Sporting Life" cabinet photograph of Ty Cobb from the 1902 - 1911 era, a highly scarce and valuable early Ty Cobb issue.

11. In or about November 2024, Plaintiff submitted the card to PSA through PSA's online submission system for "dual" service: card authentication/grading plus autograph authentication. PSA accepted the submission as Order No. 24573735 / Submission No. 12603590.

12. PSA processed the order through its normal workflow, including "Research & ID," "Grading," "Assembly," and "QA Checks," and on or about March 3, 2025, PSA's online order status showed the order as "Completed" and "Grades Ready."

13. For Certification No. 101214417, PSA's online account view for Plaintiff reflects the following status for the card: "N0: AUTHENTIC - Auto: Questionable Authenticity - CARD - 1902-1911 W600 SPORTING LIFE CABINETS TYRUS R. COBB DETROIT A.L. - UNIFORM - TYPE 4."

14. PSA returned the card raw, not encapsulated in a PSA holder, with a printed label stating "W600 SPORTING LIFE CABINETS TY COBB DET. A.L.- UNIFORM–TYPE 4 / ? AUTH TCT - DO NOT HOLDER."

15. PSA did not create any publicly searchable certification entry in PSA's public database that the card is an authentic W600 Ty Cobb cabinet, even though PSA's internal records and Plaintiff's account page show "N0: AUTHENTIC - Auto: Questionable Authenticity - CARD" for Certification No. 101214417.

16. As of the date of this filing, Plaintiff's PSA online account for Order No. 24573735 continues to display Certification No. 101214417 as "N0: AUTHENTIC - Auto: Questionable Authenticity - CARD - 1902-11 W600 SPORTING LIFE CABINETS TYRUS R. COBB DETROIT A.L. - UNIFORM–TYPE 4," confirming that PSA has internally recorded the card as authentic while continuing to withhold any outwardly usable authentication.

17. PSA's written terms and online marketing describe PSA's core business as providing authentication, grading, and certification services that create trusted, transferable market value for collectibles, particularly when encapsulated or accompanied by PSA-branded certifications and entries in PSA's verification database.

18. Plaintiff reasonably understood and expected that, where PSA determines that a card itself is authentic, PSA would provide a usable, verifiable form of authentication, such as encapsulation with an appropriate label for the card along with an indication that the autograph was not authenticated, or a formal PSA Letter of Authenticity ("LOA") for the card component.

19. Instead, PSA kept Plaintiff's full "dual service" fee, internally coded the card as N0: Code "Authentic," refused to provide any encapsulation or LOA for the card itself, removed the card's image from Plaintiff's online account, and returned the card with a "? AUTH TCT – DO NOT HOLDER" label that stigmatizes the card in the marketplace and signals to auction houses that PSA will not stand behind the item publicly.

20. Major auction houses and high-end buyers rely heavily on PSA encapsulation and PSA's public certification database. Without such publicly verifiable authentication, Plaintiff has been unable to sell or consign the card at anything close to the value that a PSA-authenticated W600 Ty Cobb would command.

21. PSA's conduct effectively converted an internally recognized authentic W600 Ty Cobb cabinet 1902-1911 into an effectively unsaleable item by withholding the outward certification that PSA's services are marketed and sold to provide.

## V. CONDITIONS PRECEDENT AND DTPA NOTICE

22. All conditions precedent to Plaintiff's non-DTPA causes of action have been performed, have occurred, or have been waived.

23. On or about August 13, 2025, Plaintiff sent PSA a written pre-suit notice under Texas Business & Commerce Code § 17.505(a) by certified mail, reasonably describing his complaint and damages and offering an opportunity to cure. PSA did not make a timely, reasonable settlement offer.

## VI. CLAIMS FOR RELIEF

### COUNT I - BREACH OF CONTRACT

(And, in the Alternative, Breach of the Implied Covenant of Good Faith and Fair Dealing Under California Law)

24. Plaintiff incorporates by reference the allegations in Paragraphs 1–23 as if fully set forth here.

25. Plaintiff and PSA entered into a binding contract consisting of, among other things: (a) PSA's online submission agreement, including the PSA Grading Terms and Conditions and Collectors User Agreement; and (b) Plaintiff's submission of the W600 Ty Cobb card and payment of all applicable fees.

26. Plaintiff fully performed his obligations under the contract by creating an account, agreeing to PSA's terms, accurately submitting and describing the card, and paying the required fees and shipping costs.

27. Under the parties' agreement, reasonably interpreted, PSA undertook to provide card authentication and grading services for authentic items, and to deliver a usable, market-recognized output typically encapsulation with an appropriate label and/or a public certification record in PSA's database, particularly where PSA concludes that the card itself is authentic.

28. PSA's own systems and labels show that PSA determined that the card itself is "Authentic," while the autograph is of "Questionable Authenticity."

29. PSA materially breached the contract by:

(A) Failing to provide any publicly verifiable authentication output for the authentic card component (such as encapsulation with an accurate label indicating the autograph was not authenticated, or an LOA for the card);

(B) Refusing to list Certification No. 101214417 in PSA's public database as an authentic W600 Ty Cobb card;

(C) Returning the card with a "? AUTH TCT - DO NOT HOLDER" label that undermines the card's marketability despite PSA's internal "Authentic" determination; and

(D) Retaining the full premium "dual service" fee while withholding the essential benefit of the bargain, usable, transferable authentication for the authentic card.

30. Even if PSA's contract terms reserve some "discretion" regarding encapsulation, PSA was not permitted to exercise that discretion in a manner that deprives Plaintiff of the very benefits for which he paid, particularly while PSA retains internal use and control of the "Authentic" determination.

31. In the alternative, to the extent California law governs the contract, PSA's refusal to provide any outward authentication for an authentic card, while retaining the fee and internal "Authentic" status, constitutes a breach of the implied covenant of good faith and fair dealing under California law. PSA exercised contractual discretion in bad faith and in a manner that unfairly frustrated Plaintiff's justified expectations under the agreement.

32. As a direct and proximate result of PSA's breaches, Plaintiff has suffered substantial economic damages, including but not limited to: the loss in market value of the W600 Ty Cobb card (alleged to be between approximately $1.5 million and $2 million), fees paid to PSA, shipping and insurance costs, and other incidental expenses, all in an amount to be proven at trial.

## COUNT II - PROMISSORY ESTOPPEL (ALTERNATIVE)

33. Plaintiff incorporates by reference the allegations in Paragraphs 1–32 as if fully set forth here.

34. PSA's marketing, website content, and course of dealing constitute clear promises that: (a) authentic items submitted for PSA services will be authenticated, graded, and/or encapsulated; and (b) PSA's services will produce recognized, transferable market value by means of PSA's holders, labels, and certification database.

35. Plaintiff reasonably and foreseeably relied on these promises by entrusting a uniquely valuable W600 Ty Cobb card to PSA, paying the applicable "dual" service fees, and foregoing other potential authentication or sale options.

36. PSA knew or reasonably should have expected that collectors like Plaintiff would rely on PSA's representations regarding encapsulation, authentication, and market recognition.

37. To the extent PSA contends that its written terms do not require it to provide any outward authentication for an authentic card in these circumstances, then justice can be done only by enforcing PSA's promises under the doctrine of promissory estoppel or by awarding damages equivalent to the benefit Plaintiff reasonably expected.

38. As a result of PSA's failure to honor its promises, Plaintiff has suffered the damages described above.

## COUNT III - NEGLIGENT MISREPRESENTATION

39. Plaintiff incorporates by reference the allegations in Paragraphs 1-38 as if fully set forth here.

40. In the course of its business of supplying information for the guidance of others in transactions involving collectibles, PSA made false or misleading representations and omissions regarding the status and marketability of Plaintiff's card.

41. PSA simultaneously: (a) internally designated the card as "Authentic"; (b) removed or withheld the card's image and public certification entry from Plaintiff's account and PSA's public database; and (c) returned the card with a "? AUTH TCT - DO NOT HOLDER" label, signaling to the market that PSA would not stand behind the item.

42. PSA failed to exercise reasonable care in communicating its determinations in a manner consistent with collectors' reasonable expectations and with the actual fact that PSA concluded the card itself is authentic.

43. Plaintiff justifiably relied on PSA's expertise and representations and has suffered foreseeable economic loss as a result, including the inability to realize the fair market value of an authentic W600 Ty Cobb card.

## COUNT IV - NEGLIGENCE

44. Plaintiff incorporates by reference the allegations in Paragraphs 1- 43 as if fully set forth here.

45. PSA owed Plaintiff a duty to exercise reasonable care in the handling, evaluation, and communication of results for a high-value submission, including a duty not to mishandle or mis-describe an authentic card in a way that destroys its marketability.

46. Reasonable care required, among other things, either: (a) encapsulating the authentic card with a clear label noting that the autograph could not be authenticated; or (b) issuing a PSA LOA or equivalent written certification acknowledging card authenticity, even if the autograph did not pass.

47. PSA breached its duty of care by, among other things, refusing to provide any outward authentication of the card while internally recording it as authentic, stigmatizing the card with a "? AUTH TCT - DO NOT HOLDER" label, and failing to adopt or apply reasonable procedures for handling authentic cards with disputed autographs.

48. PSA's negligence proximately caused Plaintiff's economic losses as described above.

## COUNT V – TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA)

49. Plaintiff incorporates by reference the allegations in Paragraphs 1–48 as if fully set forth here.

50. Plaintiff is a "consumer" under the Texas DTPA because he sought and acquired PSA's services by purchase and use.

51. PSA engaged in false, misleading, or deceptive acts or practices, including but not limited to:

(A) Representing that PSA's services would confer market-recognized authentication and encapsulation for genuine items, when PSA in fact withheld all outward authentication for Plaintiff's authentic card;

(B) Failing to disclose, prior to submission, that PSA could keep the full fee, internally record a card as authentic, and yet refuse any public certification, encapsulation, or LOA for that card.

(C) Representing that PSA's services and outputs had characteristics, uses, or benefits they do not have in this context; and

(D) Engaging in an unconscionable course of conduct by withholding all usable proof of authenticity for Plaintiff's genuine card while returning it with a stigmatizing label and destroying its marketability.

52. PSA's conduct as described above was a producing cause of Plaintiff's economic damages, including but not limited to the loss in market value of the card and related costs.

53. Plaintiff further alleges that PSA acted knowingly or, in the alternative, intentionally, entitling Plaintiff to seek additional (including treble) damages under the DTPA.

54. Any purported disclaimers or limitations in PSA's boilerplate terms cannot waive Plaintiff's DTPA rights because Texas law strictly regulates waivers of DTPA remedies and requires specific formalities that were not satisfied in Plaintiff's consumer click-through transaction.

55. Plaintiff seeks all remedies available under the DTPA, including economic damages, additional damages for knowing or intentional conduct, reasonable and necessary attorneys' fees (if counsel is later retained), and court costs.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that, after trial on the merits, the Court enter judgment in his favor and against Defendant, and award the following relief:

(A) Economic damages in an amount sufficient to fully compensate Plaintiff for the loss in market value of the W600 Ty Cobb card (alleged between approximately $1.5 million and $2 million) plus all fees, shipping, insurance, and incidental costs, in an amount to be proven at trial;

(B) Additional and/or treble damages under the Texas DTPA for knowing or intentional violations, as permitted by law;

(C) Equitable and specific relief, including orders:

i. Requiring PSA to list Certification No. 101214417 in PSA's public database as an authentic W600 "Sporting Life" Ty Cobb trading card, with a clear notation that the autograph has not been authenticated;

ii. Requiring PSA, at its expense, to encapsulate the card in a PSA holder with an accurate label reflecting card authenticity and the non-authenticated autograph, or, in the alternative, to issue a formal PSA Letter of Authenticity for the card component; and

iii. Requiring PSA to remove or correct any "Questionable Authenticity" stigma or notation that misleads the marketplace about the authenticity of the card itself;

(D) In the alternative, if equitable relief is declined, rescission and restitution of all fees Plaintiff paid to PSA, together with consequential and incidental damages;

(E) Reasonable and necessary attorneys' fees (if counsel is later retained), court costs, and expenses as permitted by law, including under Tex. Bus. & Com. Code § 17.50(d);

(F) Pre-judgment and post-judgment interest at the maximum rates allowed by law; and

(G) Such other and further legal and equitable relief, at law or in equity, to which Plaintiff may be justly entitled.

## VIII. JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,

/s/ Yamil Kadir Santiago Torres
Yamil Kadir Santiago Torres
Plaintiff pro se
1107 Austin Highway, Unit 91005
San Antonio, Texas 78209
Phone: (210) 857-1061
Email: yamil.santiago@gmail.com

Dated: December 3, 2025