**FILED**

March 01, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ vl

DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **YAMIL KADIR SANTIAGO TORRES,** | § | |
| Plaintiff, | § | |
| | § | **Civil Action No. 5:25-cv-01200-FB-RBF** |
| v. | § | |
| | § | |
| **COLLECTORS UNIVERSE, INC.,** | § | |
| **d/b/a PROFESSIONAL SPORTS** | § | |
| **AUTHENTICATOR (PSA),** | § | |
| Defendant. | § | |

# PLAINTIFF'S THIRD AMENDED COMPLAINT

## (JURY TRIAL DEMANDED)

### PRELIMINARY STATEMENT

1. Plaintiff Yamil Kadir Santiago Torres ("Plaintiff" or "Torres") brings this Third Amended Complaint against Defendant Collectors Universe, Inc., d/b/a Professional Sports Authenticator ("PSA" or "Defendant"), for fraud by nondisclosure and half-truth, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), arising from Defendant's fraudulent authentication practices regarding Plaintiff's rare W600 Sporting Life Ty Cobb baseball card.

2. This case presents a straightforward fraud: PSA accepted Plaintiff's payment for dual authentication services, internally determined the card was authentic, recording it as code "N0: AUTHENTIC" in its own systems but then refused to issue a public certification, instead assigning an unexplained "Do Not Holder" ("DNH") designation that destroyed the card's market value. PSA told a *half-truth*: it disclosed that the card would not be publicly certified, while concealing its own internal finding that the card was authentic. This is the textbook definition of actionable fraud by half-truth under Texas law. *See **Bombardier Aero., Inc. v. SPEP Aircraft Holdings, LLC**, 572 S.W.3d 213, 219-20 (Tex. 2019).*

3. PSA dominates over 90% of the sports card authentication market. Its certification is the industry standard; a card's market value is inextricably tied to PSA's label. When PSA withholds certification from an authentic card while pocketing the authentication fee, it does not merely breach a contract; it weaponizes its monopoly position to destroy the economic value of a customer's property while profiting from the very service it refused to perform honestly.

## PARTIES

4. Plaintiff Yamil Kadir Santiago Torres is an individual residing in San Antonio, Bexar County, Texas. Plaintiff is a consumer of Defendant's authentication services within the meaning of the DTPA.

5. Defendant Collectors Universe, Inc., d/b/a Professional Sports Authenticator, is a Delaware corporation with its principal place of business in Santa Ana, California. Defendant conducts substantial business in the State of Texas and in this District, including providing authentication and grading services to Texas consumers through its website at www.psacard.com.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. Plaintiff is a citizen of Texas. Defendant is a citizen of Delaware and California.

7. This Court has personal jurisdiction over Defendant because Defendant transacts business in Texas, maintains an interactive website accessible to and used by Texas consumers, accepts orders and payments from Texas consumers, and has sufficient minimum contacts with Texas such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including Plaintiff's submission of the card, receipt of Defendant's communications, and the economic injury suffered by Plaintiff.

## FACTUAL ALLEGATIONS

### A. PSA's Business and Dominant Market Position

9. PSA is the world's largest and most trusted third-party authentication and grading service for trading cards, sports memorabilia, and collectibles. PSA holds an estimated 90% or greater share of the trading card authentication market.

10. PSA markets its services with representations designed to induce consumer reliance and trust. PSA's marketing materials state, among other things, that "*Our label means authentic*" and promote PSA certification as the industry gold standard that maximizes a card's market value. These representations are central to PSA's business model and create reasonable consumer expectations that PSA will provide honest, complete, and transparent authentication determinations.

11. PSA's market dominance means that its authentication determinations effectively control the market value of sports cards and collectibles. A card bearing a positive PSA certification commands a substantial premium over an uncertified card. Conversely, a card to which PSA assigns a negative or ambiguous designation, such as "Do Not Holder" ("DNH") suffers a catastrophic loss in market value, regardless of the card's actual authenticity.

### B. Plaintiff's Submission of the W600 Ty Cobb Card

12. Plaintiff is the owner of a rare W600 Sporting Life Ty Cobb baseball card (the "Card"), a pre-war era collectible of significant historical and monetary value. Based on publicly available auction data and PSA's own Population Report, which shows only three to four such cards have ever been graded by PSA, comparable W600 Ty Cobb cards in authenticated condition have sold for between $300,000 and $876,000.

13. On or about the date reflected in PSA Submission Order No. 24573735, Plaintiff submitted the Card to PSA for dual authentication services, both authentication (determining whether the card is genuine) and grading (assigning a numerical condition grade). Plaintiff paid PSA's required fees for these services.

14. PSA accepted Plaintiff's submission, collected Plaintiff's payment, and undertook its authentication and grading process for the Card, assigned PSA Certification Number 101214417.

### C. PSA's Internal Determination: The Card Is Authentic

15. Upon information and belief, and as confirmed by PSA's own internal records accessible to Plaintiff through PSA's online portal, PSA internally determined that Plaintiff's Card is authentic. Specifically, PSA's internal system records the Card's status as code "N0: AUTHENTIC." This designation confirms that PSA's own authenticators concluded after expert examination that the Card is a genuine, authentic W600 Sporting Life Ty Cobb baseball card.

16. The code **"N0: AUTHENTIC"** designation in PSA's internal system is not ambiguous. It is a clear, affirmative finding by PSA's own experts that the Card passed authentication. This internal finding is the single most important fact in this case, and PSA has concealed it from the public while issuing a contradictory external designation.

### D. PSA's External Designation: "Do Not Holder" (DNH)

17. Despite its own internal finding that the Card is authentic, PSA refused to issue a public certification. Instead, PSA assigned the Card a "**Do Not Holder**" ("DNH") designation. PSA provided no explanation, no written report, and no opportunity for the Plaintiff to understand, challenge, or appeal this determination.

18. The DNH designation, without explanation, creates a false and misleading impression in the marketplace that PSA found the Card to be inauthentic or otherwise deficient. In reality, PSA's own records show the opposite the Card is authentic. The DNH designation destroyed the Card's market value by stigmatizing it with an unexplained negative label from the industry's dominant authenticator.

19. PSA's conduct constitutes a classic *half-truth*: PSA disclosed a partial truth (that the Card would not receive public certification) while concealing the material fact that its own internal assessment confirmed the Card's authenticity. "A half-truth is a whole lie" when the partial disclosure creates a false impression. ***Bombardier Aero., Inc. v. SPEP Aircraft Holdings, LLC***, **572 S.W.3d 213, 219-20 (Tex. 2019).**

### *E. Damages Suffered by Plaintiff*

20. As a direct and proximate result of PSA's conduct, Plaintiff has suffered and continues to suffer the following damages: **(a)** loss of market value of the Card, which with proper PSA authentication and grading would be valued at between $300,000 and $876,000, but which now bears a stigmatizing DNH label that renders it effectively unmarketable at fair value; **(b)** loss of the authentication fees paid to PSA; **(c)** loss of opportunity to sell, insure, display, or otherwise use the Card at its authenticated value; and **(d)** mental anguish, frustration, and emotional distress resulting from PSA's fraudulent and deceptive conduct.

### *F. PSA's Retaliatory and Bad-Faith Conduct During Litigation*

21. After Plaintiff filed this lawsuit, PSA engaged in a pattern of retaliatory and bad-faith conduct, including but not limited to: **(a)** blocking Plaintiff's access to his PSA account across multiple browsers and devices, displaying "Network Error" messages that prevented Plaintiff from accessing critical evidence and records; **(b)** sending collection correspondence threatening to destroy or sell Plaintiff's property including 26 additional items valued at approximately $100,000 while simultaneously blocking account access; and **(c)** modifying its Terms of Service mid-litigation (between August 2025 and November 24, 2025) to add a new "Authentic Altered" classification option that did not exist at the time of Plaintiff's submission, evidencing PSA's awareness that intermediate options existed but were not offered to Plaintiff.

22. Plaintiff paid the disputed balance of $732.46 under economic duress and protest in order to prevent the destruction or disposition of his additional property. Plaintiff expressly reserved all claims and defenses in connection with said payment. The payment does not constitute a waiver or satisfaction of any claims asserted herein.

### *G. Industry Context and Pattern of PSA Misconduct*

23. PSA's conduct toward Plaintiff is not an isolated incident. Upon information and belief, PSA has engaged in a pattern and practice of issuing unexplained DNH designations to authentic

items, retaining authentication fees without providing the services paid for, and failing to provide transparent authentication determinations. This pattern is relevant to establishing PSA's knowledge, intent, plan, and absence of mistake or accident under Federal Rule of Evidence 404(b)(2) and to Plaintiff's DTPA claims.

24. Upon information and belief, PSA's authentication practices have been the subject of industry criticism, Congressional inquiry, and federal investigation, further evidencing that PSA was on notice of the need for transparency and fair dealing in its authentication determinations.

## CAUSES OF ACTION

## COUNT I

## FRAUD BY NONDISCLOSURE AND HALF-TRUTH

25. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

26. Under Texas law, a party who makes a partial disclosure has a duty to disclose the whole truth. ***Bombardier Aero., Inc. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219-20 (Tex. 2019)**. A half-truth conveying a misleading impression through partial disclosure is as actionable as an affirmative misrepresentation.

27. PSA owed Plaintiff a duty to disclose its complete authentication findings. This duty arose from: **(a)** the contractual relationship between the parties, whereby Plaintiff paid PSA to provide authentication services and PSA undertook to render a professional authentication opinion; **(b)** PSA's status as a professional information supplier upon whose expertise Plaintiff justifiably relied; **(c)** PSA's voluntary partial disclosure of authentication results, which triggered a duty to disclose the whole truth; and **(d)** PSA's superior knowledge of material facts specifically, its internal code **"N0: AUTHENTIC"** finding that Plaintiff could not have discovered through reasonable diligence.

28. PSA breached its duty of disclosure by: (a) internally recording the Card as code "N0: AUTHENTIC" while externally assigning a "Do Not Holder" designation without explanation; (b) concealing its affirmative finding of authenticity from Plaintiff and the market; (c) creating a false impression that the Card was inauthentic or deficient; and (d) retaining Plaintiff's authentication fees while withholding the authentication determination Plaintiff paid for.

29. PSA's concealment was material. Had PSA disclosed its internal "N0: AUTHENTIC" finding, or issued a public certification consistent with its internal determination, the Card would retain its full market value of $300,000 to $876,000. Instead, PSA's half-truth disclosing the DNH label while concealing the authentic finding destroyed the Card's value.

30. PSA acted with intent to deceive, or in reckless disregard of Plaintiff's rights, by maintaining a dual system of internal and external authentication designations that allowed PSA to find a card authentic while publicly stigmatizing it.

31. Plaintiff justifiably relied on PSA's external designation because PSA is the dominant market authenticator and consumers have no access to PSA's internal records unless discovered through litigation. Plaintiff suffered damages as a direct and proximate result of PSA's fraud, including loss of the Card's market value, loss of authentication fees, loss of use and enjoyment, and mental anguish.

## COUNT II

### NEGLIGENT MISREPRESENTATION

32. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

33. PSA is a "professional information supplier" within the meaning of ***McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999)**, and the Restatement (Second) of Torts § 552. PSA is in the business of supplying information, authentication, and grading opinions for the guidance of others in their business transactions.

34. PSA supplied false or misleading information to Plaintiff by issuing a DNH designation that contradicted its own internal finding of authenticity. PSA failed to exercise reasonable care or competence in obtaining or communicating this information.

35. Plaintiff justifiably relied on PSA's external designation in determining the Card's market value and marketability. Plaintiff suffered pecuniary loss as a direct and proximate result of PSA's negligent misrepresentation, including the diminution in the Card's market value and loss of the authentication fees paid to PSA.

36. The economic loss rule does not bar this claim because PSA is a professional information supplier and Plaintiff's claim falls within the *McCamish* exception. *See also **Sloane v. B.F.D. 1000, LLC**, No. 01-21-00258-CV, 2023 WL 199564, at \*8 (Tex. App. Houston [1st Dist.] Jan. 17, 2023*, no pet.).

## COUNT III

### BREACH OF CONTRACT

37. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

38. A valid and enforceable contract existed between Plaintiff and PSA. Plaintiff submitted the Card and paid PSA's required fees for authentication and grading services. PSA accepted the submission and payment, creating a binding agreement to provide authentication and grading services in accordance with PSA's published terms, standards, and representations.

39. PSA breached the contract by: (a) failing to provide the authentication and grading services Plaintiff paid for in a manner consistent with PSA's published standards and representations; (b) issuing a DNH designation that contradicted PSA's own internal finding of authenticity; (c) retaining Plaintiff's fees while failing to deliver the services as represented; and (d) failing to provide any explanation, written report, or opportunity to appeal the DNH designation.

40. Plaintiff performed all conditions precedent and fulfilled all obligations required of him under the contract, including submitting the Card and paying all required fees.

41. As a direct and proximate result of PSA's breach, Plaintiff has suffered damages, including the diminution in the Card's market value, loss of authentication fees, loss of use and enjoyment, and consequential damages.

## COUNT IV

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

42. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

43. Under Texas law, every contract contains an implied covenant of good faith and fair dealing that neither party will do anything to injure the right of the other to receive the benefits of the agreement. *See Tymshare, Inc. v. Covell*, **727 F.2d 1145, 1152 (D.C. Cir. 1984)** (Scalia, J.).

44. PSA's contract with Plaintiff granted PSA discretion in rendering authentication opinions. PSA exercised this discretion in bad faith by: (a) internally finding the Card authentic while externally issuing a contradictory DNH designation; (b) maintaining a dual-track system that allowed PSA to conceal favorable findings from customers; (c) retaining all fees without performing the contracted service honestly; (d) blocking Plaintiff's account access during litigation; and (e) sending threatening collection correspondence while withholding Plaintiff's property.

45. PSA's exercise of contractual discretion in bad faith deprived Plaintiff of the benefit of his bargain, an honest, transparent, and complete authentication determination, and caused the damages described herein.

## COUNT V

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-
## CONSUMER PROTECTION ACT DECEPTIVE ACTS

46. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

47. Plaintiff is a "consumer" within the meaning of Texas Business & Commerce Code § 17.45(4) because he sought and acquired PSA's authentication and grading services by purchase.

48. PSA engaged in false, misleading, or deceptive acts or practices in violation of DTPA § 17.46(b), including but not limited to: (a) representing that PSA's authentication services have characteristics, uses, benefits, or qualities which they do not have (§ 17.46(b)(5)); (b) representing that PSA's services are of a particular standard, quality, or grade when they are of another (§ 17.46(b)(7)); (c) failing to disclose information concerning PSA's authentication services that was known at the time of the transaction, with the intent to induce Plaintiff into a transaction he would not have entered had the information been disclosed (§ 17.46(b)(24)); and (d) representing that the Card was not authentic when PSA's own internal finding confirmed authenticity.

49. PSA's deceptive acts and practices were a producing cause of Plaintiff's damages. Plaintiff is entitled to recover economic damages, treble damages upon a finding that PSA acted knowingly or intentionally, and reasonable and necessary attorneys' fees (or pro se litigant fees) under DTPA § 17.50.

50. The professional services exemption under DTPA § 17.49(c) does not apply because PSA's authentication services do not constitute "professional services" as defined by the statute, and because PSA's conduct goes beyond a mere failure to use ordinary care it constitutes knowing fraud by half-truth. *See Nast v. State Farm Fire & Cas. Co.*, **82 S.W.3d 114 (Tex. App. San Antonio 2002**, no pet.).

## COUNT VI

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT UNCONSCIONABLE ACTION

51. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

52. PSA's conduct constitutes an unconscionable action or course of action within the meaning of DTPA § 17.45(5), in that PSA took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. Specifically: (a) PSA possesses exclusive control over its internal authentication records and designations, creating an extreme information asymmetry; (b) PSA leveraged its 80%+ market dominance to issue an unexplained DNH designation knowing that Plaintiff had no meaningful alternative authenticator; (c) PSA retained Plaintiff's fees while withholding the service Plaintiff paid for; and (d) PSA used threats of property destruction and account blocking to coerce payment during active litigation.

53. PSA's unconscionable conduct was a producing cause of Plaintiff's damages.

## DTPA PRE-SUIT NOTICE

54. Plaintiff provided Defendant with written pre-suit notice of his DTPA claims in substantial compliance with Texas Business & Commerce Code § 17.505. Additionally, Defendant has had actual notice of all claims and the factual bases therefor through the course of this litigation, including through the original Complaint, First Amended Complaint, Second Amended Complaint, and associated filings and correspondence.

## DAMAGES

55. As a direct and proximate result of Defendant's wrongful conduct as described herein, Plaintiff has suffered damages, including but not limited to:

a. Loss of market value of the Card, estimated at between $300,000 and $876,000, representing the difference between the Card's value with proper PSA authentication and its current stigmatized value;

b. Loss of authentication and grading fees paid to PSA;

c. Loss of opportunity to sell, insure, display, or otherwise use the Card at its authenticated value;

d. Consequential damages arising from PSA's retaliatory conduct during litigation, including costs incurred to prevent destruction of Plaintiff's property;

e. Mental anguish and emotional distress;

f. Punitive and/or exemplary damages;

g. Treble damages under the DTPA upon a finding of knowing or intentional conduct;

h. Pre-judgment and post-judgment interest at the highest lawful rate; and

i. Costs of court and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

56. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Yamil Kadir Santiago Torres respectfully prays that this Court:

a. Award Plaintiff actual damages in an amount to be determined at trial, but not less than $1,500,000;

b. Award Plaintiff treble damages under the DTPA;

c. Award Plaintiff punitive and/or exemplary damages;

d. Award Plaintiff pre-judgment and post-judgment interest;

e. Award Plaintiff costs of court;

f. Order PSA to issue a public certification consistent with its internal "N0: AUTHENTIC" finding;

g. Grant such other and further relief as the Court deems just, equitable, and proper.

Respectfully submitted,

Dated: March 1st, 2026

**YAMIL KADIR SANTIAGO TORRES**

Plaintiff, Pro Se

1107 Austin Highway, Unit 91005

San Antonio, Texas 78209

Telephone: (210) 857-1061

Email: yamil.santiago@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 2nd, 2026, a true and correct copy of the foregoing Plaintiff's Third Amended Complaint was served on all counsel of record via the Court's CM/ECF system and/or via email and certified mail to:

Emily A. Fitzgerald, Esq.

Jonathan D. Parente, Esq.

**ALSTON & BIRD LLP**

2200 Ross Avenue, Suite 2300

Dallas, Texas 75201

_____

**YAMIL KADIR SANTIAGO TORRES**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **YAMIL KADIR SANTIAGO TORRES,** | § | |
| Plaintiff, | § | |
| | § | **Civil Action No. 5:25-cv-01200-FB-RBF** |
| v. | § | |
| | § | |
| **COLLECTORS UNIVERSE, INC.,** | § | |
| **d/b/a PROFESSIONAL SPORTS** | § | |
| **AUTHENTICATOR (PSA),** | § | |
| Defendant. | § | |

## PLAINTIFF'S NOTICE OF PAYMENT OF OUTSTANDING BALANCE AND WITHDRAWAL OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. 18)

**TO THE HONORABLE COURT:**

Plaintiff Yamil Kadir Santiago Torres ("Plaintiff") respectfully files this Notice of Payment of Outstanding Balance and Withdrawal of Emergency Motion for Temporary Restraining Order and would show the Court as follows:

## I. BACKGROUND

1. On or about January 20, 2026, Plaintiff filed an Emergency Motion for Temporary Restraining Order, Preservation of Evidence, and Sanctions (Dkt. 18) seeking, among other relief, an order requiring Defendant Collectors Universe, Inc. d/b/a Professional Sports Authenticator ("PSA") to: (a) restore Plaintiff's account access; (b) preserve all evidence; and (c) refrain from destroying or disposing of Plaintiff's 26 additional items held by PSA.

2. On January 30, 2026, the Court held a hearing on the Emergency Motion (Dkt. 18) and the parties' other pending motions. During the hearing, PSA's counsel represented on the record that PSA would preserve evidence and comply with its obligations regarding Plaintiff's property.

3. On February 6, 2026, Magistrate Judge Farrer issued a Report and Recommendation (R&R) recommending that the Emergency Motion for TRO (Dkt. 18) be mooted based on the parties' representations at the January 30 hearing.

## II. PAYMENT UNDER PROTEST AND PROPERTY RETURN

4. Subsequent to the January 30 hearing, Plaintiff paid the outstanding balance of $732.46 to PSA. PSA thereafter returned the 26 additional items that had been held in its possession.

5. Plaintiff's payment was made under economic duress and protest. Plaintiff was compelled to make payment in order to prevent the threatened destruction or disposition of his property items while simultaneously litigating claims against PSA. This payment does not constitute a waiver, accord and satisfaction, or release of any claims or defenses asserted in this action. Plaintiff expressly reserved all rights and claims at the time of payment pursuant to Texas Business & Commerce Code § 1.308 (performance under reservation of rights).

6. PSA's voluntary return of Plaintiff's property and acceptance of payment does not moot Plaintiff's underlying claims. The core dispute in this action, PSA's internal "N0: AUTHENTIC" finding for Plaintiff's W600 Ty Cobb card versus the externally-issued "Do Not Holder" designation, remains fully live and unaffected by the resolution of the collateral property and balance issues.

## III. WITHDRAWAL OF EMERGENCY MOTION FOR TRO

7. In light of the foregoing, and consistent with Magistrate Judge Farrer's R&R, Plaintiff hereby voluntarily withdraws the Emergency Motion for Temporary Restraining Order, Preservation of Evidence, and Sanctions (Dkt. 18), without prejudice to Plaintiff's right to refile in the event PSA fails to preserve evidence or engages in further retaliatory conduct.

8. This withdrawal is limited to the TRO motion (Dkt. 18) only. Plaintiff does not withdraw any other pending motions or claims in this action. All causes of action in Plaintiff's operative complaint remain in full force and effect.

## IV. PRESERVATION OF RIGHTS

9. Plaintiff does not waive and expressly reserves any and all claims, defenses, and rights in this action, including but not limited to:

a. All claims arising from PSA's fraudulent and deceptive authentication practices regarding the W600 Ty Cobb card (Order No. 24573735, Cert. No. 101214417);

b. All claims arising from PSA's retaliatory conduct during litigation, including account blocking, collection threats, and mid-litigation modification of Terms of Service;

c. All claims for damages, including the diminution in market value of the Card, treble damages under the DTPA, punitive damages, and mental anguish;

d. The right to refile emergency motions in the event PSA fails to preserve evidence or engages in further misconduct; and

e. All other claims, defenses, and rights available under law or equity.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) accept this Notice of Payment and Withdrawal of Emergency Motion for TRO (Dkt. 18); (2) note Plaintiff's express reservation of all claims and rights; and (3) grant such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: March 1st, 2026

YAMIL KADIR SANTIAGO TORRES

Plaintiff, Pro Se

1107 Austin Highway, Unit 91005

San Antonio, Texas 78209

Telephone: (210) 857-1061

Email: yamil.santiago@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 2nd, 2026, a true and correct copy of the foregoing Notice of Payment and Withdrawal of Emergency Motion for Temporary Restraining Order was served on all counsel of record via the Court's CM/ECF system and/or via email and certified mail to:

Emily A. Fitzgerald, Esq.
Jonathan D. Parente, Esq.
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201

**YAMIL KADIR SANTIAGO TORRES**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **YAMIL KADIR SANTIAGO TORRES,** | § | |
|    Plaintiff, | § | |
| | § | **Civil Action No. 5:25-cv-01200-FB-RBF** |
| v. | § | |
| | § | |
| **COLLECTORS UNIVERSE, INC.,** | § | |
| **d/b/a PROFESSIONAL SPORTS** | § | |
| **AUTHENTICATOR (PSA),** | § | |
|    Defendant. | § | |

# CERTIFICATE OF SERVICE

I hereby certify that on March 2nd, 2026, a true and correct copy of the following documents was served on all counsel of record via the Court's Pro Se submission portal and/or via email and certified mail:

1. Plaintiff's Third Amended Complaint (Jury Trial Demanded)

2. Plaintiff's Notice of Payment of Outstanding Balance and Withdrawal of Emergency Motion for Temporary Restraining Order (Dkt. 18)

3. This Certificate of Service was made upon the following counsel of record:

Emily A. Fitzgerald, Esq.

Jonathan D. Parente, Esq.

**ALSTON & BIRD LLP**

2200 Ross Avenue, Suite 2300

Dallas, Texas 75201

Email: emily.fitzgerald@alston.com

Email: jonathan.parente@alston.com

## CERTIFICATE OF SERVICE

Service was effected by: (1) submission through the Court's Pro Se submission portal at https://
www.txwd.uscourts.gov/submit-documents-non-ecf-filers/; (2) email to counsel at the addresses
listed above; and (3) U.S. Certified Mail, Return Receipt Requested, to the address listed above
on March 2nd, 2026.

Dated: March 1, 2026

YAMIL KADIR SANTIAGO TORRES

Plaintiff, Pro Se

1107 Austin Highway, Unit 91005

San Antonio, Texas 78209

Telephone: (210) 857-1061

Email: yamil.santiago@gmail.com